**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Richard Moulton

   v.                                    Civil No. 11-cv-391-PB

Carroll County Department
of Corrections, et al.


**<u>REPORT AND RECOMMENDATION</u>**


Before the court is Richard Moulton's complaint (doc. no. 1), filed pursuant to 42 U.S.C. § 1983, alleging that defendants have violated his federal constitutional rights during his detention in the custody of the Carroll County Department of Corrections ("CCDC").  The complaint is before the court for preliminary review to determine whether it states any claim upon which relief may be granted.  See 28 U.S.C. § 1915A(a) (requiring court to conduct preliminary screening of prisoner complaints); United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2) (authorizing magistrate judge to conduct preliminary review of cases filed in forma pauperis by prisoners).

Moulton's complaint contains a request for preliminary injunctive relief.  That request, construed as a motion for a preliminary injunction, was referred to this magistrate judge

for hearing, findings, and a recommendation as to disposition (doc. no. 5).

## Procedural History

In addition to his complaint and motion for preliminary injunction, Moulton has filed a "Reply to the Order Dated: August 16, 2010" (doc. no. 4), which is construed as an addendum to the complaint; a "Motion to Amend Allegations" (doc. no. 20), which is construed as a motion to amend the complaint; a "Reply to Defendant's Objection to Request for Preliminary Injunction" (doc. no. 11); a "Response to Motion to Clarify and Compel" (doc. no. 18); and a "Motion to Order the Implementation of a Dental Plan" (doc. no. 24), which has also been referred to this Magistrate Judge for a recommendation as to disposition (doc. no. 25).

Defendants, appearing through counsel, have objected to the request for preliminary injunction (doc. no. 9); provided plaintiff's dental records and other related documents (doc. nos. 10, 16 and 23); filed a "Motion to Clarify and Compel" (doc. no. 15), which has been denied (doc. no. 19); and filed two status updates (doc. nos. 21 and 22). Defendants' filings, as well as the evidence presented at the September 9, 2011, preliminary injunction hearing, have been fully considered in

the court's recommendation on Moulton's request for preliminary injunctive relief.

The court now construes the complaint to consist of all of the assertions contained in Moulton's filings in this matter to date, numbered in the docket as 1, 4, 11, 18, 20 and 24.  The court will consider documents filed regarding Moulton's requested preliminary injunction (doc. nos. 10, 16 and 23) to be part of the complaint, as Moulton has not contested the validity or authenticity of those documents.  Further, the court will take as true for the purposes of preliminary review the factual allegations that were presented in Moulton's testimony at the September 9 preliminary injunction hearing.

**Background**

1.   <u>Initial Dental Complaints at the CCDC</u>

Moulton was incarcerated at the CCDC as a pretrial detainee on February 7, 2011.  When he entered the CCDC, Moulton reported to the intake staff that he had multiple cavities, and was missing one tooth.  Moulton testified at the September 9 hearing that when he entered the CCDC, his teeth were not bothering him and he therefore did not request any dental care at that time.

On March 2, 2011, Moulton submitted a "Medical Request Form" ("MRF") to the CCDC medical department, stating that he had cavities and that his teeth had become "very sensitive,"

which was causing him difficulty eating.  He requested in the
MRF that his cavities be filled.  On March 4, 2011, Moulton
filed another MRF complaining that he had numerous cavities in
addition to the ones that he had previously requested to be
filled.  Moulton requested repair of all of his cavities in
order to prevent further damage to his teeth.

On March 8, 2011, CCDC medical staff placed Moulton on the
"dental list" and made an appointment for Moulton to see a
dentist, Dr. Christopher Kempton, with whom the CCDC contracts
to provide inmate dental care.  Moulton's appointment was set
for April 27, 2011, the first appointment the dentist had
available.

On April 21, 2011, Moulton filed another MRF.  At that time
Moulton indicated that his teeth had become very painful and
that he needed to see a dentist before the damage to his teeth
worsened.  Moulton had already been placed on the dental list,
and already had an appointment scheduled, and no further action
was taken at that time.  On April 26, 2011, unaware of his
impending dental appointment,[1] Moulton filed grievances stating
that the delay in seeing a dentist had caused additional damage
to his teeth, as his dental issues had initially rendered his

---

[1]According to the CCDC dental policy, submitted to the court
as an exhibit in this case, for security reasons, pretrial
detainees are not given advance notice of the dates of
appointments with outside medical personnel.

teeth "very sensitive," but were now causing him "almost constant tooth pain."

2.   April 27, 2011, Dentist Appointment

On April 27, 2011, Moulton was taken to see Dr. Kempton. Dr. Kempton conducted a complete dental examination of Moulton. Dr. Kempton identified multiple cavities in need of repair and also indicated that three of Moulton's teeth (numbers 2, 15 and 29)[2] needed root canals and crowns in order to be repaired.  It appears that at that time Dr. Kempton found one of Moulton's teeth (number 7) possibly to be beyond repair and in need of extraction.  Dr. Kempton told Moulton that, pursuant to his contract with the CCDC, he was not allowed to perform any reparative dental work.  Dr. Kempton told Moulton that he could only perform examinations and tooth extractions.  Moulton did not wish to have any of his teeth removed, as he believed they were all reparable at that time.

Dr. Kempton told Moulton that due to the limitations in the terms of his contract with the CCDC, any repairs would have to be paid for by Moulton.  Moulton testified at the September 9

---

[2]Dr. Kempton and the CCDC have referred to Moulton's individual teeth by number.  According to the dental records before the court, a person's top teeth are numbered from 1-16, starting at the back right side and proceeding sequentially to the back left side.  Similarly, bottom teeth are numbered 17-32, moving sequentially from the back left side to the back right side.

hearing that he discussed a payment plan with Dr. Kempton, but
that due to his incarcerated status, and his uncertainty as to
how long he would be incarcerated, he was unable to promise Dr.
Kempton any future payments, and was therefore unable to
establish a payment plan.  Moulton was returned to the CCDC with
prescriptions for an anti-inflammatory medication and an
antibiotic.  Dr. Kempton performed no dental work on Mr.
Moulton.

   After Moulton's appointment, Dr. Kempton's office called
the CCDC medical department.  Moulton's medical records reflect
that Dr. Kempton reported that "to save [Moulton's] teeth and to
keep [Moulton] out of pain, Moulton would need root canals and
crowns."  According to Moulton's medical records, the CCDC nurse
told the dentist that he would have to contact CCDC
Superintendent Jason Johnson.  The CCDC provided Moulton with
the medication prescribed by the dentist.

### 3.   Post-Appointment Requests for Dental Care

   On April 29, 2011, Moulton filed a written request to Supt.
Johnson requesting that his cavities be filled to prevent
further decay of his teeth.  Moulton also requested root canals
and crowns to repair his four badly damaged teeth.  In the
request, Moulton wrote: "The dentist stated under his contract
with the jail he could only do extractions . . . . Please tell

me the dentist was mistaken." On May 3, 2011, Supt. Johnson provided Moulton with a written response that stated, in its entirety: "The dentist is not mistaken. The department does not do crowns and root canals. The department will address the emergent needs."

On May 12, 2011, Moulton filed a grievance stating that he needed major repair work on three of his teeth, and that he needed cavities to be filled, but the dentist would not repair any teeth, as the dentist understood that the CCDC contract allowed him only to extract teeth. On May 24, 2011, CCDC Officer Michael Fowler responded to Moulton in writing, stating that the information received from the dentist would have to be reviewed, as would the dentist's contract with the CCDC. Fowler advised Moulton to make a formal request to Supt. Johnson asking him to review the relevant information and make a decision regarding Moulton's dental work. On May 25, 2011, Moulton submitted a grievance to Johnson specifically requesting that his cavities be filled, and also that root canals be performed and crowns are put in to repair his badly damaged teeth.

Supt. Johnson responded to Moulton in writing on May 31, 2011, as follows:

> I am in receipt of your grievance dated May 25, 2011,
> claiming you believe that the facility is denying you
> adequate dental care with respects (sic) to not
> authorizing the performance of root canals to repair
> your teeth.

New Hampshire RSA 30B:4 – **The Powers and Duties of the Superintendent,** *The Superintendent shall provide each prisoner in his or her custody with necessary sustenance, clothing, bedding, shelter, and medical care.* **Laaman V Helgemoe,** 1977 (sic) "Inmates are entitled to reasonable dental care." **Meur v. Greene County Jail Employees** (8th Circuit, 2007) state (sic) that an inmate lacked standing to seek injunctive relief to the counties (sic) unwritten "pull teeth only policy."

The Department of Corrections has a responsibility to provide necessary and adequate medical care.  If the dentist feels it is reasonable to pull the tooth to address the acute dental pain that is the decision. If there is a small cavity, and it is reasonable to fill the cavity to prevent the further destruction of the tooth, the decision would be made by the dentist to fill the cavity.

If you wish to pay for the root canals in order to salvage your teeth, you can make payment arrangements with the family dental clinic.  The Department of Corrections will not authorize root canals to repair teeth so badly damaged.

Based on the cases sited (sic) in this response, I make the finding of your grievance unfounded (sic).

(emphasis in original).

On June 3, 2011, Moulton filed a grievance with the County Commissioners complaining that the CCDC's policy regarding the extraction of teeth violated his constitutional rights, and that he wanted his teeth to be repaired.  Moulton never received a reply to that grievance.

4.  <u>Transfers to Rockingham and Strafford Counties</u>

On July 10, 2011, CCDC officials transferred Moulton
to the Rockingham County Department of Corrections("RCDC").
Moulton alleges that his transfer was punitive and motivated by
his repeated grievances and requests for dental care.  Moulton
states that his transfer made it difficult for his criminal
attorneys, who are located in Laconia, to meet with him,
impeding his defense to his criminal charges.  Further, Moulton
states that his business is going through bankruptcy, and that
his bankruptcy attorney is in Wakefield, New Hampshire, which is
a prohibitive distance from the RCDC to allow in-person
communications.  Further, Moulton states that his visits from
family and friends were inhibited by his transfer to the RCDC
due to the distance his visitors had to travel to see him.

On July 12, 2011, Moulton filed a grievance with the
Carroll County Commissioners complaining that he had been
transferred to the RCDC in retaliation for his repeated
grievances and requests for dental care.  On July 20, 2011, the
Commissioners responded to Moulton's July grievance, finding it
to be unfounded.

At the RCDC, Moulton complained about his dental issues,
and the RCDC medical staff, recognizing that he was in need of
dental care, scheduled an appointment for Moulton to see a
dentist on August 15, 2011.  Moulton asserts that the RCDC staff

arranged the appointment, but that CCDC officials remained responsible for paying for his dental care and retained authority to approve the dental treatment Moulton received at the RCDC.  The following day, on August 10, 2011, five days before Moulton's scheduled dental appointment, CCDC officials transferred Moulton to the Strafford County Department of Corrections ("SCDC").  As a result, Moulton did not see a dentist on August 15, 2011.

At the September 9 hearing, Moulton testified that, while at the SCDC, he had been taken to a dentist on September 3, 2011.  The Strafford County dentist observed that Moulton needed significant dental work, but was unable to perform any dental work at that time due to the amount of inflammation and infection then present in Moulton's mouth.  The dentist placed Moulton on pain medication and antibiotics in order to ready Moulton to receive dental treatment.  Moulton testified that the dentist expected that he would be able to receive dental treatment as of the time of the September 9 hearing.

5.  <u>CCDC Dental Care Policy</u>

Supt. Jason Johnson testified at the September 9 hearing that, contrary to what has been asserted by Moulton, the CCDC does not have an "extraction only" policy regarding dental care. Supt. Johnson testified that where a dentist deemed a filling to

be an appropriate remedy for an inmate's dental problem that the CCDC would pay for the filling.  Supt. Johnson testified further, however, that in his opinion, he has no obligation to pay for an inmate to have a root canal and crown to save a badly damaged tooth when extraction of the tooth would be reasonable and would constitute adequate care.

In order to make the determination as to what is reasonable in a particular case, Supt. Johnson testified that he would consult with an inmate's treating dentist and then make a decision as to how to provide the inmate with reasonably adequate care.  In this case, however, Johnson testified that he did not speak directly with Dr. Kempton, or with any other dental medical professional, prior to making a determination as to what care was reasonable for the CCDC to provide to Moulton.[3] Instead, Johnson testified, after he received Moulton's May 25 grievance, he read case law from around the country to determine whether a root canal was reasonable in Moulton's case.  Johnson then formed the opinion that it was "more likely than not" that courts would uphold an extraction-instead-of-root-canal policy,

---

[3]Johnson testified that he spoke to Dr. Kempton's office manager who told Johnson that the dentist had recommended either a root canal or an extraction.  Given the several layers of hearsay in that testimony, as well as its inconsistency with other evidence in the case indicating that the dentist did not recommend extraction at that time, the court accords that testimony minimal weight on the question of the dentist's pre-hearing recommendations for Moulton's treatment.

and that, therefore, the CCDC would not consider root canals for Moulton if the extraction option was "on the table."  Johnson testified that reading case law also led him to conclude that root canals are, generally speaking, an elective procedure.

Supt. Johnson testified that he is willing to approve fillings for Moulton's cavities, as he deems those repairs to be reasonable.  At the time of the hearing, however, Johnson had not yet scheduled an appointment or taken any action to have Moulton's teeth filled.  Johnson scheduled no appointment despite his awareness of Moulton's written requests to have his cavities filled on March 2, March 4, April 21, April 29, May 12, and May 25.  Johnson stated that the fillings requested on those dates were also accompanied by requests for root canals and that, as of the date of the hearing, he had not scheduled an appointment for fillings because he had not received a separate written request from Moulton to have only his fillings performed.

6.   Post-Hearing Dental Reports

After the September 9 hearing, the court directed defendants to provide the court with a report, from a dentist who had examined Moulton, regarding the condition of Moulton's teeth and the reasonable options available to treat Moulton's dental problems.  The defendants submitted paperwork from Dr.

Kempton, dated October 5, 2011, which included a comprehensive dental treatment plan for Moulton. The dentist's October 5 report did not address whether extraction was a reasonable treatment option because Moulton had expressed to Dr. Kempton that he did not want his teeth pulled, and Dr. Kempton had concerns about the ethics of recommending a procedure that was against the wishes of the patient.

In his October 5 comprehensive treatment plan, Dr. Kempton stated that Moulton had three restorable teeth (numbers 2, 15 and 29), and he recommended a root canal and a crown for each of those teeth. Dr. Kempton indicated that there was a fourth tooth (number 7) that might either be restorable or need to be extracted. Dr. Kempton also indicated that sixteen of Moulton's teeth (numbers 3, 5, 6, 8, 9, 11, 12, 18, 19, 20, 21, 24, 26, 27, 28 and 31) were in need of fillings, most on more than one surface of the tooth.

Defendants indicated that they would be willing to provide extractions for the four teeth that were in need of extensive repair (numbers 2, 7, 25 and 29). Defendants further indicated that they would be willing to pay Dr. Kempton to fill six of the sixteen teeth that Dr. Kempton indicated needed fillings. Defendants did not explain why they did not authorize filling

the other ten teeth for which Dr. Kempton had recommended fillings.

On October 12, 2011, despite certain reservations, in response to a further request made by defendants, on October 12, 2011, Dr. Kempton produced a letter and report outlining several treatment plans that, in his opinion, were reasonable options for treating Moulton.  The report indicates that the alternatives listed therein were not based on Moulton's wishes, and that they were not equal in desirability or cost.  Dr. Kempton's October 12 report states that, while extraction without replacement of the tooth is the least desirable and least expensive of the several alternative treatments outlined, it is nonetheless a reasonable treatment option.  Dr. Kempton did not indicate that any irreparable damage or serious harm would occur as a result of the extraction of the four teeth in question (numbers 2, 7, 15 and 29).

In a memorandum dated November 1, 2011, and submitted to the court (doc. no. 23), Supt. Johnson indicated that the CCDC is willing to extract the four badly damaged teeth (numbers 2, 7, 15 and 29) and to fill three teeth (numbers 8, 9 and 10). The November 1 letter does not explain why the CCDC is not willing to fill all sixteen teeth identified by Dr. Kempton as in need of fillings.

**Discussion**

I.   Preliminary Review

     A.   Standard of Review

     Under LR 4.3(d)(2), when an incarcerated plaintiff or
petitioner commences an action pro se, the magistrate judge
conducts a preliminary review.  The magistrate judge may issue a
report and recommendation after the initial review, recommending
that claims be dismissed if the court lacks subject matter
jurisdiction, the defendant is immune from the relief sought,
the complaint fails to state a claim upon which relief may be
granted, the allegation of poverty is untrue, or the action is
frivolous or malicious.  See id. (citing 28 U.S.C. § 1915A &
Fed. R. Civ. P. 12(b)(1)).  In conducting a preliminary review,
the magistrate judge construes pro se pleadings liberally, to
avoid inappropriately stringent rules and unnecessary
dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per
curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976),
to construe pleadings liberally in favor of pro se party);
Castro v. United States, 540 U.S. 375, 381 (2003).

     To determine whether the complaint states any claim upon
which relief could be granted, the court applies a standard
analogous to that used in reviewing a motion to dismiss filed
under Fed. R. Civ. P. 12(b)(6).  The court decides whether the

15

complaint contains sufficient factual matter, accepted as true,
to state a claim to relief that is plausible on its face.  See
Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949
(2009).

     To make this determination, the court employs a two-pronged
approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1,
12 (1st Cir. 2011).  The court first screens the complaint for
statements that "merely offer legal conclusions couched as fact
or threadbare recitals of the elements of a cause of action."
Id. (citations, internal quotation marks and alterations
omitted).  A claim consisting of little more than "allegations
that merely parrot the elements of the cause of action" may be
dismissed.  Id.  The second part of the test requires the court
to credit as true all non-conclusory factual allegations and the
reasonable inferences drawn from those allegations, and then to
determine if the claim is plausible.  Id.  The plausibility
requirement "simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence" of illegal
conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).
The "make-or-break standard" is that those allegations and
inferences, taken as true, "must state a plausible, not a merely
conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of
Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at
555-56 ("Factual allegations must be enough to raise a right to

relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

B.   42 U.S.C. § 1983

A government official may be held personally liable under 42 U.S.C. § 1983 if, acting under color of state law, the official caused the deprivation of a federal constitutional or statutory right. 42 U.S.C. § 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.; see also Haywood v. Drown, 556 U.S. 729, ___, 129 S. Ct. 2108, 2111 (2009); Sanchez v. Pereira-Castillo, 590 F.3d 31, 40-41 (1st Cir. 2009).  To the extent the defendants here were acting under color of state law when they are alleged to have violated Moulton's federal constitutional rights, Moulton's claims arise under § 1983.

      C.   Dental Care Claim

          1.   Incarcerative Status

   "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); Giroux v. Somerset Cnty., 178 F.3d 28, 31 (1st Cir. 1999).  The Eighth Amendment protects convicted prison inmates from prison officials acting with deliberate indifference to their serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 831 (1994).  Because the events giving rise to Moulton's § 1983 claims occurred during his pretrial detention in the custody of the CCDC, his right to constitutionally adequate dental care arises under the Fourteenth Amendment Due Process Clause.  See Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005).  The Due Process Clause provides at least as much protection to a detainee in need of medical or dental care as the Eighth Amendment provides to a prisoner.  See id.

## 2.   Standard for Dental Care Claim

"The failure of correctional officials to provide inmates
with adequate medical care may offend the Eighth Amendment if
their 'acts or omissions [are] sufficiently harmful to evidence
deliberate indifference to serious medical needs.'"  Leavitt v
Corr. Med. Servs., Inc., 645 F.3d 484, 497, (1st Cir. 2011).
"Dental care is one of the most important medical needs of
inmates.  Accordingly, the Eighth Amendment requires that
prisoners be provided with a system of ready access to adequate
dental care."  Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.
1989) (internal quotation and citations omitted); see also
Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)
(cognizable claim regarding inadequate dental care can be based
on various factors including pain suffered by plaintiff);
Chambers v. N.H. Prison, 562 F. Supp. 2d 197, 200 (D.N.H. 2007).

The Supreme Court has adopted a two-part test for reviewing
medical care claims under the Eighth Amendment.  See Farmer, 511
U.S. at 834.  A court must first determine whether the prisoner
has alleged facts sufficient to show that he has not been
provided with adequate care for a "serious medical need."  A
serious medical need is one that involves a substantial risk of
serious harm to the prisoner if it is not adequately treated, or
if treatment is sufficiently delayed.  See Leavitt, 645 F.3d at

497.  "'A medical need is "serious" if it is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  Id. (quoting Gaudreault v. Mun'y of Salem, 923 F.2d 203, 208 (1st Cir. 1990)).  "Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."  Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010); see also Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000) (cavity presented serious medical condition).

Second, where the plaintiff has demonstrated that he has received inadequate dental care, the court must determine whether the complaint contains sufficient allegations to show deliberate indifference.  Berry, 604 F.3d at 440.  To be found deliberately indifferent to an inmate's serious medical need, a prison official must both be actually aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also actually draw the inference.  See Farmer, 511 U.S. at 837.  Deliberate indifference "may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'"  Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) (citation omitted).  The First Circuit has recently noted that:

> The Eighth Amendment standard is in part one of
> subjective intent.  The phrasing [of the standard]
> itself implies at least a callous attitude, but
> subjective intent is often inferred from behavior and
> even in the Eighth Amendment context . . . a
> deliberate intent to harm is not required.  Rather, it
> is enough for the prisoner to show a wanton disregard
> sufficiently evidenced by denial, delay, or
> interference with prescribed health care.

Battista v. Clarke, 645 F.3d 449, 453 (1st Cir. 2011) (internal

quotation marks and citations omitted); see also Watson v.

Caton, 984 F.2d 537, 540 (1st Cir. 1993) (deliberate

indifference may be found in "wanton" decisions to deny or delay

care, where the action is reckless, "not in the tort law sense

but in the appreciably stricter criminal-law sense, requiring

actual knowledge of impending harm, easily preventable").

"Proof of deliberate indifference requires a showing of greater

culpability than negligence but less than a purpose to do harm,

and it may consist of showing a conscious failure to provide

medical services where they would be reasonably appropriate."

Coscia v. Town of Pembroke, 659 F.3d 37, 39 (1st Cir. 2011)

(internal citation omitted).  A mere delay in needed dental care

will not violate the Eighth Amendment, but if that delay causes

or gives rise to a substantial risk of serious harm to a

prisoner, the requisite deliberate indifference to a serious

medical need may be found.  See Farrow v. West, 320 F.3d 1235,

1243-44 (11th Cir. 2003) (need for dental care combined with

effects of not receiving it may give rise to Eighth Amendment

claim); see also Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995)
(delay in dental care coupled with knowledge of patient's pain
can support Eighth Amendment claim); Estelle, 429 U.S. at 104-
105 (delay in treatment may constitute deliberate indifference
if delay exacerbates injury or unnecessarily prolongs inmate's
pain).

"Although the Constitution does require that prisoners be
provided with a certain minimum level of medical treatment, it
does not guarantee to a prisoner the treatment of his choice."
Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988).  Therefore,
where an inmate's claim "concerns not the absence of help, but
the choice of a certain course of treatment," the inmate must
demonstrate that the medical attention he received was "'so
clearly inadequate as to amount to a refusal to provide
essential care.'"  Feeney v. Corr. Med. Servs., Inc., 464 F.3d
158, 163 (1st Cir. 2006) (citation omitted).

### 3.   Fillings

On March 2, 2011, Moulton reported that he was experiencing
tooth sensitivity due to unfilled cavities in his teeth, and
requested dental care to repair those cavities.  By April 21,
2011, the sensitivity had become pain, sufficient to interfere
with eating.  In addition to pain, Moulton suffered swelling and
infection resulting from his dental problems.  Moulton saw a

dentist thereafter, who recommended, among other things, filling
the cavities.  After the dentist told Moulton that the CCDC
would pay only for extractions, Moulton grieved that issue in
May 2011.

Moulton has shown that CCDC medical personnel and
supervisors, including Capt. Fowler and Supt. Johnson, were
aware of Moulton's need for fillings, by virtue of Moulton's May
12 and May 25 grievances.  As the CCDC was providing Moulton
with medication for swelling and infection, it can be inferred
that jail officials were aware that Moulton's dental condition
required additional prompt attention.

Despite that knowledge, no official at the CCDC did
anything to address Moulton's need for fillings.  Johnson's May
31 response stated that, to the extent the dentist determined
that fillings were reasonable to repair cavities, "to prevent
the further destruction of the tooth, the decision would be made
by the dentist to fill the cavity."  Neither Johnson nor anyone
else at the CCDC, however, took any action to have Moulton's
cavities filled.  Nor did they attempt to mitigate the risk of
further tooth destruction, despite being aware of that risk.

Moulton has therefore stated a claim that he was denied
adequate medical care for his cavities, which presented a
serious medical need, because of the substantial risk known to
defendants, that the failure to fill his cavities would result

in the further destruction of unfilled teeth.  Because facts
presented to the court demonstrate that Johnson and Fowler were
aware of, and disregarded, a serious risk to Moulton's dental
health, Moulton has sufficiently alleged that the denial of
fillings constituted deliberate indifference to his serious
medical needs.  In an Order issued simultaneously with this
Report and Recommendation, the court will direct service of
Moulton's dental care claim upon defendants Fowler and Johnson,
to the extent that the claim asserts that the failure to
authorize and provide fillings violated Moulton's right to
constitutionally adequate dental care.

        4.   Root Canals

    After Moulton's April 27 dentist appointment, Dr. Kempton
advised the CCDC medical department that Moulton would need root
canals and crowns to save several teeth (numbered 2, 15 and 29)
and to ease his tooth pain.  Moulton also asserts that tooth
number 7 was salvageable at that time, but the record does not
bear out that assertion.  Moulton asserts that the refusal to
repair reparable teeth constitutes the denial of adequate
medical care, and that defendant CCDC officials acted with
deliberate indifference to his serious medical need.  Moulton
further asserts that the "extraction only" policy that he claims
is in place at the CCDC, as applied to him, resulted in a health
care decision driven solely by cost considerations, not by

medical necessity, and that basing a medical plan purely on cost considerations exhibits deliberate indifference to serious medical needs.

### a.   CCDC Dental Care Policy

The CCDC's written policy on dental care states that "emergency dental care" will be provided to inmates, but that "Carroll County will not assume the cost of preventative dental care for inmates."  The policy does not define what constitutes emergency care, or the limits that might be placed on what care the CCDC does agree to provide.  The policy also does not address, either by inclusion or exclusion, any particular dental procedure.

On May 12, 2011, Moulton filed an Inmate Grievance Form asking for fillings and root canals, and stating that Dr. Kempton had told him that those procedures could not be performed because "the jail did not allow any repairs to be done, and tooth extraction was [Moulton's] only option." Moulton specifically asked whether Dr. Kempton's understanding of available options was correct.  Supt. Johnson personally responded on May 3, 2011, in writing, that: "The dentist is not mistaken.  The department does not do crowns and root canals. The department will address the emergent needs."

At the hearing, however, and in documents submitted since that time, Supt. Johnson has described a broader policy regarding the scope of dental care that the CCDC will provide than that which was described in the CCDC written policy and Johnson's May 3 statement.  Supt. Johnson testified that, contrary to its written policy, the CCDC will provide certain non-emergency care by filling cavities for teeth where a dentist has deemed a filling a reasonable measure to prevent further damage to a tooth.  The defendants have provided the court with a letter from Dr. Kempton, dated October 12, 2011, setting forth several reasonable treatment alternatives for Moulton.  In the letter, Dr. Kempton indicated that extracting Moulton's badly damaged teeth, without replacing them, was a minimally reasonable, if undesirable, treatment option.  The record does not suggest that there would be any risk of serious harm attendant in the extraction of the four teeth in question (numbers 2,7, 15 and 29).

Prior to receiving any information from Dr. Kempton, Supt. Johnson had independently deemed root canals to be elective, rather than medically necessary, procedures.  Under that theory, extraction was, therefore, per se a reasonable alternative to a root canal for an inmate with a badly damaged tooth.  Johnson based this opinion on his review of caselaw from other jurisdictions and not on any general medical opinion or specific

medical information concerning Moulton's teeth.  Defendants
dispute Moulton's assertion that the CCDC employs an "extraction
only" policy, and insist that it employs instead an "extraction
only" policy where there is a choice between extraction or a
root canal.  The parties have argued, in their written and oral
pleadings, the constitutionality of those policies.  The court,
however, declines to resolve the "extraction only" dispute, as
the resolution of that question is not necessary to determine
the issues in this action.

### b.   Moulton's Treatment

The issue presented to this court for the purposes of
preliminary review is whether Moulton has sufficiently stated a
claim that he has been denied adequate medical care for his
serious dental needs.  Moulton grounds this claim upon the
CCDC's denial of root canals and crowns for those teeth that can
be repaired by these procedures, and instead providing only
extraction of those teeth.  Dr. Kempton deems extraction of
those teeth to be a reasonable treatment option.  While Moulton
has expressed his own opinion that extraction of reparable teeth
is unreasonable, Moulton has not offered any medical evidence to
support that assertion.

As previously discussed, the CCDC is not obligated to
provide Moulton with root canals or crowns if extraction is a

reasonably adequate medical treatment.  The record demonstrates that extraction is a reasonable treatment alternative in this instance and that the CCDC has been consistently willing to provide that treatment.  Moulton does not have a constitutional right to the treatment of his choice, and the assertion that the jail has failed to provide him with the best available treatment, or with a more desirable treatment, does not state a claim for either the denial of adequate medical care or deliberate indifference to Moulton's serious medical needs.  See Jackson, 846 F.2d at 817.

The CCDC is not refusing to treat Moulton for the problems arising out of his four badly damaged teeth.  Nor has the CCDC delayed the provision of that treatment or refused to treat him for infections or pain.  To the extent that Moulton's teeth are not amenable to repair by a filling, but require more extensive work, therefore, the court finds that the CCDC has provided Moulton with a reasonable treatment option, and has not hindered his ability to access that option.  Accordingly, Moulton has failed to allege facts that support a showing that the CCDC is deliberately indifferent to his need for treatment for his four badly damaged teeth (numbered 2, 7, 15 and 29).  The claim, to the extent it complains of having only extraction available as a treatment option for those four teeth, should be dismissed.

D.   <u>State Law Negligence Claim</u>

Moulton alleges that the CCDC defendants are liable to him for professional negligence, for failing to attend to his dental needs while he was incarcerated there.  While mere negligence does not state a constitutional claim for relief, it may state a claim under New Hampshire law.  To state a negligence claim, Moulton must assert that: (1) the defendants owed him a duty; (2) that the duty was breached; (3) that Moulton suffered an injury; and (4) that defendants' breach of their duty was the proximate cause of the injury.  See Ronayne v. State, 137 N.H. 281, 284, 623 A.2d 1210, 1212 (1993).  New Hampshire recognizes a "special relationship" between jailers and inmates that creates a duty on the part of the jailer to protect the inmate from an unreasonable risk of harm because prisoners, by virtue of their incarceration, cannot obtain certain necessities for themselves, including medical care.  See Murdock v. City of Keene, 137 N.H. 70, 72-73, 623 A.2d 755, (1993) (citing Restatement (Second) of Torts § 314A at 118 (1965)).  To the extent Moulton alleges that the CCDC's refusal to provide both fillings and root canals and crowns constitutes a negligent abdication of its duty to provide him with medical care, he has asserted a claim under state law.

This court has supplemental jurisdiction over the state law claims that arise out of the same case or controversy as the

section 1983 claims properly before it.  See 28 U.S.C. § 1367.
Here, Moulton's state law claim is based on the same events from
which the federal claims arise.  The court will, therefore,
exercise its supplemental jurisdiction over the state law claim
and allow it to proceed against defendants Fowler and Johnson.

   E. Retaliation

  Moulton complains that CCDC officials transferred him from
the RCDC to the Strafford County House of Corrections five days
before a scheduled dental appointment in order to retaliate
against him for filing grievances concerning his dental care.
The First Amendment shields prisoners from retaliation in
response to their engaging in protected speech.  Ortiz v.
Jordan, ___ U.S. ___, ___, 131 S. Ct. 884, 893 (2011) (citing
Crawford-El v. Britton, 523 U.S. 574, 592 (1998)).
"[G]overnment actions, which standing alone do not violate the
Constitution, may nonetheless be constitutional torts if
motivated in substantial part by a desire to punish an
individual for exercise of a constitutional right."  Mitchell v.
Horn, 318 F.3d 523, 530 (3d Cir. 2003); see also Ferranti v.
Moran, 618 F.2d 888, 892 n. 4 (1st Cir. 1980) ("actions
otherwise supportable lose their legitimacy if designed to
punish or deter an exercise of constitutional freedoms").
In order to state a claim for retaliation for the exercise of

his First Amendment rights, Moulton must allege: (1) the conduct which led to the alleged retaliation was protected by the First Amendment; (2) some adverse action at the hands of the prison officials; and (3) a causal link between the exercise of his First Amendment rights and the adverse action taken. See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).

Moulton has a First Amendment right to file grievances and administrative complaints regarding the conditions of his confinement. See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (recognizing that First Amendment right to petition the government for a redress of grievances includes redress under established prison grievance procedures). Accordingly, Moulton has alleged that he engaged in conduct protected by the First Amendment and has satisfied the first prong of a retaliation claim.

Moulton further alleges that his August 10, 2011, transfer to the SCDC caused him to miss a dentist appointment he had scheduled in Rockingham County for August 15, 2011, and thus delayed his receipt of dental care. To the extent the delay in dental care harmed him, Moulton has alleged sufficient facts at this time to satisfy the second prong of a retaliation claim.

The first two prongs of his retaliation claim having been satisfied, the court turns to the third prong of the claim asserted by Moulton. Moulton states that CCDC officials

transferred him from the RCDC to the SCDC on August 10, 2011,
five days before his scheduled dental appointment in Rockingham
County, thereby preventing him from seeing a dentist on that
date.  Moulton alleges that the timing of the transfer was
suspicious, as it was only five days before his scheduled
appointment, and further, that the CCDC officials have engaged
in a pattern of failing to provide him access to dental care.

Moulton's assertions do not demonstrate any causal link
between the denial or delay in providing him with dental care,
and an intention to punish or retaliate against him for filing
grievances.  To the extent that Moulton alleges that the
transfer was improperly motivated by financial concerns, he
merely restates his Fourteenth Amendment deliberate indifference
claim, and does not state a separate retaliation claim.  For
these reasons, the retaliation claim should be dismissed.[4]

---

[4]At the September 9 hearing, defendants indicated that
Moulton's transfer to the SCDC occurred because RCDC officials
refused to continue to house him because he filed too many
grievances.  Should Moulton intend to assert that RCDC
officials' refusal to house him was retaliatory, such a claim
would arise against the RCDC officials, and not the defendants
here.  As Moulton has not named any RCDC official as a defendant
to this action, no retaliation claim based on the RCDC
officials' actions will be construed as having been asserted in
the complaint.

F.   County Defendants

   1.   Supervisory Liability

CCDC and the Carroll County Commissioners (collectively the "county defendants") are named as defendants to this action. The county defendants can only be held liable under § 1983 where they have caused the constitutional violation at issue.  See Trask v. Cnty. of Strafford, 772 F. Supp. 42, 45 (D.N.H. 1991) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)). "Supervisory liability under § 1983 cannot be 'predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions.'"  Aponte Matos v. Toledo-Davila, 135 F.3d 182, 192 (1st Cir. 1998) (citation omitted).  A supervisor must be either "a primary actor involved in, or a prime mover behind, the underlying violation."  Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999).  In other words, supervisory liability lies only where an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation.  See Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009).

   The County Commissioners in this case were unaware of any problem concerning Moulton's dental care until June 2011, when Moulton alleges he filed a grievance with the Commissioners. Moulton does not allege that the Commissioners had a direct hand

in denying him dental care.  The Commissioners cannot be held
liable, under a supervisory liability theory, therefore, for
acts of which they were unaware and were not otherwise alleged
to have caused.  Accordingly, no supervisory liability lies
against the Commissioners for any actions taken by Fowler and
Johnson prior to Moulton's June 2011 grievance to the
Commissioners.

Moulton received no response to his June 2011 grievance to
the Commissioners.  Moulton did not provide a copy of the
grievance he filed with the Commissioners but alleges in his
complaint that his grievance to the Commissioners concerned the
"extraction-only" policy and stated that he "wanted [his] teeth
repaired."  The record is not sufficient to draw a reasonable
inference that the Commissioners had subjective knowledge of the
CCDC's refusal to provide fillings, as opposed to root canals
and crowns, or that the individual Commissioners were
deliberately indifferent to his need for fillings.  In this
Circuit, "supervisory liability under a theory of deliberate
indifference will be found only if it would be manifest to any
reasonable official that his conduct was very likely to violate
an individual's constitutional rights."  Maldonado, 568 F.3d at
275 (internal quotations omitted).  Thus, to the extent Moulton
intends to state claims against the County Commissioners in

their individual supervisory capacities for the CCDC's failure to provide his fillings, those claims should be dismissed.

## 2.  Municipal Liability

To prevail against a municipality or municipal officials in their official capacity under § 1983, a plaintiff must show that a policy or custom of the municipality led to the constitutional deprivation alleged.  Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978).  "This requires that plaintiff demonstrate both the existence of a policy or custom and a causal link between that policy and the constitutional harm."  Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989).  Here, plaintiff has alleged that an unconstitutional county policy not to provide any dental repairs prevented him from receiving timely care for his cavities.  Dr. Kempton advised plaintiff that he was not permitted to conduct any dental repairs on CCDC inmates under his contract with the CCDC.  The written CCDC policy, while vague, does suggest that no preventative or other non-emergency care will be provided.

Supt. Johnson's letter to Moulton dated May 31, 2011, expressed a willingness on the part of the CCDC to fill a cavity "to prevent the further destruction of the tooth . . . ."  Supt. Johnson's testimony at the September 9 hearing was consistent with his May 31 letter.  Although defendants argued at the

hearing that their failure to provide fillings was due to the
fact that Moulton had not properly requested fillings (as
opposed to root canals), Moulton's grievances each contained
mention of his request for both fillings and root canals.

There is at least some evidence in this record from which a
plausible inference could be drawn that the county policy is the
cause of the alleged constitutional violation.  Despite
expressions of a willingness to provide fillings, the CCDC has
taken no action consistent with those assertions.  On this
limited record, the apparent unwillingness of the County to see
to the provision of Moulton's fillings leads to a plausible
inference that the failure to provide the fillings resulted from
the application of county policy to construe Moulton's need for
fillings as preventative and/or non-emergency care.  The county
defendants may therefore be served as defendants to this action
in their official capacities for the alleged unconstitutional
denial of care occasioned by its policy.

II.  Preliminary Injunction

Moulton seeks preliminary injunctive relief (doc. nos. 1
and 24) in the form of an order directing the CCDC to provide
him with dental care.  For the reasons stated below, the court
recommends that the request for a preliminary injunction be
granted in part and denied in part.

A.   Standard of Review

In considering a motion for preliminary injunctive relief, a district court must consider: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendant less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008) (quotation marks and citations omitted).  Preliminary injunctive relief is available to protect the moving party from irreparable harm, so that he may obtain a meaningful resolution of the dispute after full adjudication of the underlying action.  See Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007).  "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."  New Comm Wireless Servs. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002); see also ANSYS, Inc. v. Computational Dynamics N. Am., Ltd., 595 F.3d 75, 78 (1st Cir. 2010) (likelihood of success on the merits of the underlying action generally given particularly heavy weight in preliminary injunction decision).  For the reasons that follow, the court finds that Moulton has alleged sufficient facts to demonstrate

that he is likely to succeed on the merits of his claim
regarding a denial of fillings, that he will suffer irreparable
harm absent the issuance of an injunction, and that the balance
of hardships weighs in Moulton's favor, and any public interest
effect would be neutral.

    B.   <u>Fillings</u>

        1.   <u>Likelihood of Success on the Merits</u>

As discussed above, Moulton has alleged sufficient facts to
show that the CCDC officials acted with deliberate indifference
to his serious dental needs by failing to provide him with
fillings, despite being aware of his need for them.  Moulton has
demonstrated that he has requested fillings, and been refused,
on numerous occasions.  The evidence also demonstrates that the
fillings are necessary, and are a reasonably adequate means of
treating cavities in sixteen of Moulton's teeth.  The CCDC
Superintendent testified that he is, and has been, aware of
these facts, and that he is willing to provide such treatment.
He has still not authorized or arranged for the fillings to be
performed on Moulton, despite the passage of more than adequate
time to do so.  Accordingly, the court finds that Moulton has
met his burden at this stage of the proceedings, to demonstrate
that he is likely to succeed on the merits of his claim that he

has been denied fillings in violation of his Fourteenth Amendment rights.

        2.   <u>Irreparable Harm</u>

The evidence taken at the September 9 hearing, and supplemented by filings submitted to the court since then, demonstrates that the CCDC staff has known since March 2, 2011, that Moulton had dental problems in need of attention and possible treatment.  Since April 27, 2011, when Dr. Kempton called the CCDC medical department, the CCDC staff knew that Moulton had dental problems that had risen to the level of infection, and that extensive repair would be required to save Moulton's teeth and alleviate his pain.  Supt. Johnson testified that he received numerous requests from Moulton to have his teeth filled, but did not act on those requests because they were accompanied by requests to have root canals performed on other teeth.  There is no evidence in the record explaining why Supt. Johnson has not arranged for those fillings that he agreed in writing to provide and which a dentist has deemed necessary. Supt. Johnson has also declined to commit voluntarily to filling all sixteen of the teeth identified by Dr. Kempton as needing fillings.  The court finds, therefore, that absent a court

order, Supt. Johnson is not likely to voluntarily arrange for or provide all of the necessary fillings to Moulton.[5]

The record presently before the court also demonstrates that cavities that are not promptly filled will worsen.  The evidence demonstrates that Moulton has experienced worsening of his dental condition due to the fact that he has not received any corrective or reparative dental care for the eight months that have passed since he began to suffer tooth sensitivity and first requested care from the CCDC.  Accordingly, the court finds that Moulton has met his burden to demonstrate that he is likely to suffer irreparable harm due to his deteriorating condition absent a court order directing the CCDC to arrange for Moulton to have cavities filled in sixteen teeth as recommended by a dentist.

### 3.  Balance of Hardships

Moulton has produced evidence that further delay in the treatment of his cavities will cause his teeth to decay,

---

[5]Defendants, in their filings, indicate some concern about Dr. Kempton's intention to use resin to fill all of Moulton's cavities, rather than amalgam, which is apparently a cheaper type of filling.  The court declines to make any findings regarding the appropriate use of resin or amalgam in Moulton's fillings.  If the court's recommended injunction is adopted, the CCDC will be required to arrange for and authorize fillings for Moulton.  To the extent there is more than one reasonable and adequate material with which cavities can be filled (a question not before the court at this time), the CCDC will have to resolve the issue with the treating dentist in a manner that neither prevents nor delays the filling of Moulton's teeth.

necessitating further treatment.  Should such further treatment
be required while Moulton is at the CCDC, the evidence
demonstrates that the jail would not authorize repairs to save
teeth, even if the necessity for such repairs was occasioned by
the jail's delay.  Accordingly, Moulton has demonstrated that
he will be significantly burdened in the absence of an
injunction.

The defendants have submitted documents to the court
indicating that there is cost involved in providing fillings and
extractions to Moulton.[6]  The court has no doubt that, given the
number of teeth that require fillings or extractions, Moulton's
dental care will present a significant financial burden (at
least in the first instance) to the County.  However, that
financial burden does not outweigh the likelihood, in the
absence of an injunction, that Moulton will lose an additional
sixteen teeth, on top of the four that may be subject to
extraction already.  The court finds that the harm to Moulton

---

[6]The court notes that the record illustrates that the cost
of an extraction is $249.00, while the cost of one filling is
approximately $156.00

outweighs the financial burden the CCDC will incur providing Moulton with treatment.[7]

### 4.   Public Policy

The court's consideration of the public interest rests on the dual principles that the public has an interest in assuring the appropriate expenditure of county funds as well as an interest in insuring the provision of adequate medical care to inmates.  Defendants argue that an injunction issued in this case will have a negative effect on the public interest, in that "an injunction will burden similarly situated jailers, wardens and public officials with endless litigation and the provision of elective medical procedures."  That argument is unavailing, as the court's order directing the jail to provide Moulton with dental care necessarily rests on a determination that such care is medically necessary.  To that end, the injunction issued by this court has no bearing on the provision of "elective" procedures by the CCDC or any other correctional facility.  It is difficult to see how the public interest would be negatively affected by requiring the CCDC to provide adequate care for Moulton's serious dental needs.

---

[7]The court understands that the CCDC will bear the financial burden, at least in the first instance, with respect to Dr. Kempton's bill for Moulton's fillings.  The record does not indicate the extent to which the county requires inmates to reimburse it for costs associated with dental care.

### 5.   Plaintiff's Burden

The court finds that Moulton has demonstrated that: (1) he is likely to succeed on the merits of his Fourteenth Amendment dental claim as regards the failure of the CCDC to provide him with fillings; (2) that he will suffer irreparable harm absent the issuance of an injunction to obtain the fillings; and (3) that the harm to Moulton, if no injunction were to issue, outweighs the financial burden to the defendants; and (4) the injunction has little effect, if any, on the public interest. Accordingly, Moulton has met his burden to obtain a preliminary injunction directing the CCDC to arrange for and provide fillings for cavities in the sixteen teeth identified by the dentist in need of such treatment (numbers 3, 5, 6, 8, 9, 11, 12, 18, 19, 20, 21, 24, 26, 27, 28 and 31).

### C.   Root Canals

As explained above, the court finds that Moulton has failed to state any claim upon which relief might be granted regarding the denial of root canals in lieu of extraction for four of his teeth.  The court therefore finds that Moulton has not demonstrated that he is likely to succeed on the merits of that claim.  Moulton's request for an order directing that the defendants provide him with root canals and crowns for his teeth numbered 2, 7, 16, and 29, should therefore be denied.

D.   Personal Jurisdiction

In general, the court may only grant injunctive relief
against a party over whom it has personal jurisdiction.  See
Vasquez v. Bailey, No. CA 10-214 S, 2011 WL 2436546, *2 (D.R.I.
May 13, 2011) (report and recommendation to deny injunction),
recommendation approved and adopted by Vasquez v. Baily, No. CA
10-214 S, 2011 WL 2415339, *1 (D.R.I. June 13, 2011) (citing
R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 957 (4th Cir.
1999)).  Personal jurisdiction over a party in a civil case is
generally obtained by proper service of process on that party.
See Stafford v. Briggs, 444 U.S. 527, 553 n.5 (1980); United
Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,
960 F.2d 1080, 1085 (1st Cir. 1992).

By order issued simultaneously with this report and
recommendation, the court has directed the United States
Marshal's Office to effect service of this action on defendants.
As of the time this report and recommendation is issued,
however, service will not yet have been made on any defendant to
this action.  Accordingly, the court has not yet obtained
personal jurisdiction over defendants to enable the court to
issue the recommended injunction.  The court's recommendation
that an injunction issue, therefore, is conditioned upon proper
service of this action first being made upon defendants.

**Conclusion**

As explained in this Report and Recommendation, the court finds that Moulton has stated claims upon which relief might be granted, alleging a Fourteenth Amendment violation for the denial of fillings, and negligence under state law, against the following defendants: Jason Johnson, Michael Fowler, and Carroll County Commissioners David Sorenson, Asha Kenney, and Dorothy Solomonson in their official capacities.  In an Order issued this date, the court has directed service of these claims.

The court recommends that Moulton's claims alleging a federal constitutional violation for the denial of root canals and crowns, and for retaliation, be dismissed from this action. The court further recommends dismissal of the claims against the County Commissioners in their individual capacities.

The court also recommends that the District Judge grant in part and deny in part the request for injunctive relief contained in Moulton's complaint (doc. no. 1) and the "Motion to Order the Implementation of a Dental Plan" (doc. no. 24). Specifically, the court recommends that the court issue the following order:

> 1.   Within fourteen days of the date of this order, defendants shall schedule the first available appointment with Dr. Kempton, or another suitable dentist, to obtain dental treatment for Moulton.

2.    The defendants shall authorize the dentist to
perform any fillings the dentist deems necessary in sixteen
of Moulton's teeth (teeth numbered 3, 5, 6, 8, 9, 11, 12,
18, 19, 20, 21, 24, 26, 27, 28 and 31), and shall authorize
the dentist to extract four badly damaged teeth (teeth
numbered 2, 7, 15, and 29).

3.    The CCDC will take all reasonable measures to
assure that there is no delay or other obstacle to
Moulton's receipt of the above-described dental care.

4.    The CCDC will coordinate care with the treating
dentist to assure that the identified treatments are
provided in a manner that is medically appropriate.

5.    Nothing in this order requires or authorizes the
CCDC or the dentist to perform any medical or dental
procedure to which Moulton does not consent, or which
Moulton refuses.  Should Moulton refuse to consent to some
of the authorized dental care (e.g., extractions), the care
to which he does consent (e.g., fillings) must be provided
to the extent it is still deemed medically appropriate by
Moulton's treating dentist to do so.

6.    Moulton's request for preliminary injunctive
relief (doc. nos. 1 and 24) is denied in all other
respects.

Any objections to this Report and Recommendation must be

filed within fourteen days of receipt of this notice.  See Fed.

R. Civ. P. 72(b)(2).  Failure to file objections within the

specified time waives the right to appeal the district court's

order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57

(1st Cir. 2011) (citing United States v. Lugo Guerrero, 524 F.3d

5, 14 (1st Cir. 2008)); Sch. Union No. 37 v. United Nat'l Ins.

Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly

raised by objections to magistrate judge's report are subject to

review by district court; issues not preserved by such objection
are precluded on appeal).

 

_____
Landya McCafferty
United States Magistrate Judge


December 13, 2011

cc:  Richard Moulton, pro se
     Stephen A. Murray, Esq.

LBM:jba