UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Richard Moulton

    v.                                    Civil No. 11-cv-391-JL

Carroll County Department of
Corrections, et al.

## REPORT AND RECOMMENDATION

Richard Moulton has filed a motion to amend his complaint (doc. no. 56), seeking to add defendants and a retaliation claim to his pending civil rights action.  No objection has been filed.  For the reasons set forth herein, the court recommends that the motion to amend (doc. no. 56) be denied.

## Background

Moulton initially filed a complaint seeking damages and injunctive relief alleging, among other things, that he has been denied adequate dental care during his incarceration in the custody of the Carroll County Department of Corrections ("CCDC").  During his stint as a Carroll County inmate, Moulton has been transferred to other facilities by the CCDC several times, first to the Rockingham County Department of Corrections, then to the Strafford County Department of Corrections ("SCDC"), and then to the New Hampshire State Prison ("NHSP").

Moulton alleges that while he was housed at the SCDC, he requested an appointment to see an orthopedic specialist who could diagnose Moulton's neck, back, hip, and shoulder pain. Moulton asserts that a nurse practitioner at the prison was going to make that appointment for Moulton, but SCDC Capt. Bruce Pelkie told the nurse not to make any appointments for Moulton. Pelkie told Moulton that the SCDC was no longer willing to house him due to Moulton's filing grievances at that facility.  Pelkie told Moulton that CCDC officers would be coming to pick Moulton up.

Moulton believes that the transfer has resulted in a delay in treatment and caused Moulton to suffer from unnecessary pain. Moulton states that after he was retrieved by the CCDC, he was thereafter transferred to the NHSP.  At the NHSP, Moulton alleges that he was placed in a filthy solitary confinement cell without hygiene items, cleaning supplies, or adequate clothing or bedding.  Moulton claims that being housed under those conditions increased his physical suffering and caused him mental anguish.

## Discussion

I.   Motions to Amend

Fed. R. Civ. P. 15(a) allows a pleading to be amended once as a matter of course within twenty-one days after service of

the pleading or, if the pleading requires a response, within twenty-one days after service of a responsive pleading. See Fed. R. Civ. P. 15(a)(1). In other circumstances, a party may amend its pleading with the court's leave, which the court "should freely give [] when justice so requires." See Fed. R. Civ. P. 15(a)(2).

The court has discretion to deny a motion to amend "'for any adequate reason apparent from the record.'" See Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95, 98 (1st Cir. 2007) (quoting Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)). "Futility of the amendment constitutes an adequate reason to deny the motion to amend." Todisco, 497 F.3d at 98 (citing Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006)).

## II. Retaliation Claim

The First Amendment shields prisoners from retaliation in response to their engaging in protected speech. Ortiz v. Jordan, 131 S. Ct. 884, 893 (2011) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)). "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); see also Ferranti v. Moran,

618 F.2d 888, 892 n. 4 (1st Cir. 1980) ("actions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms").

In order to state a claim for retaliation for the exercise of his First Amendment rights, Moulton must allege: (1) the conduct which led to the alleged retaliation was protected by the First Amendment; (2) some adverse action at the hands of prison officials; and (3) a causal link between the exercise of Moulton's First Amendment rights and the adverse action taken.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012).

A.   Conduct Protected by the First Amendment

Moulton has a First Amendment right to file grievances and administrative complaints regarding the conditions of his confinement.  See Hightower v. Vose, 95 F.3d 1146, *1 (1st Cir. 1996) (unpublished table decision) (recognizing that First Amendment right to petition the government for a redress of grievances includes redress under established prison grievance procedures).  Moulton states that Pelkie or someone else at the SCDC had Moulton transferred out of the SCDC in retaliation for his filing of administrative grievances at that facility.  Moulton has alleged that he engaged in conduct protected by the First Amendment.  Moulton has thus alleged sufficient facts to satisfy the first element of a retaliation claim.

4

B.   <u>Adverse Acts</u>

To establish satisfaction of the second element of a retaliation claim, Moulton must show that the defendants took adverse action against him.  Moulton here alleges that the adverse act taken against him by SCDC officials was the refusal to continue to house Moulton.  Moulton states this act was adverse because it resulted in the denial of an appointment with an orthopedic specialist, and because he was later subjected to severe conditions at the NHSP.

<u>De minimis</u> adverse acts directed toward an inmate do not suffice to form the basis of a First Amendment claim.  <u>See</u> <u>Starr v. Dube</u>, 334 F. App'x 341, 342 (1st Cir. 2009).  "[A]n adverse act is not <u>de minimis</u> if it would chill or silence a person of ordinary firmness from future First Amendment activities."  <u>Id.</u> (internal quotation marks and citation omitted).

Generally, a transfer of an inmate from one institution to another "does not constitute an adverse action since a transfer is merely an ordinary incident of prison life."  <u>Jones v. Caruso</u>, 421 F. App'x 550, 553 (6th Cir. 2011) (citation omitted).  Accordingly, "an alleged retaliatory transfer ordinarily should be characterized as <u>de minimis</u>."  <u>Id.</u> (internal quotation marks and citation omitted).  Courts have excepted from this general rule situations in which "foreseeable, negative consequences 'inextricably follow' from the transfer – such as the prisoner's loss of his high-paying

job and reduced ability to meet with his lawyer." Id. (citation
omitted).

### 1.   Delay in Medical Attention

Moulton alleges that his transfer to the NHSP prevented the
SCDC nurse practitioner from scheduling an appointment for Moulton
with an orthopedic specialist.  The record does not indicate when
the appointment would have been scheduled, whether Moulton would
have received any pain-alleviating treatment as a result of the
appointment, or whether he has been denied timely access to medical
care and treatment at the NHSP.  Moulton has not demonstrated,
therefore, that he suffered any delay in obtaining medical care
occasioned by the transfer.  Accordingly, the court finds that the
denial of a medical appointment does not amount to more than an
ordinary incident of incarceration, insufficient to deter an inmate
of ordinary firmness from exercising his First Amendment rights.
Accordingly, Moulton has failed to state the existence of any
adverse act caused by the denial of an opportunity to schedule a
medical appointment.

### 2.   Conditions of Confinement

Moulton alleges that after he was transferred to the NHSP, he
was subjected to harsh prison conditions, including a dirty cell in
solitary confinement, and the deprivation of adequate clothing,
bedding, cleaning supplies, and hygiene products.  Moulton does not

state how long he was subject to these conditions, only that the conditions caused him mental and physical pain.

In declining to further house Moulton, the SCDC turned physical custody of Moulton back over to the CCDC. Moulton went from the CCDC to the NHSP. Even assuming, without deciding, that the conditions described at the NHSP could ever be sufficient to constitute an adverse act that is more than de minimis, no official at the SCDC is responsible for the conditions at the NHSP or Moulton's transfer thereto. Accordingly, Moulton has not alleged sufficient facts to demonstrate that any official at the SCDC subjected him to an adverse act in response to his filing grievances at that facility. Accordingly, Moulton cannot assert a plausible retaliation claim against any SCDC official related to their refusal to continue to house him. See Jones, 421 F. App'x at 553.

III. Futility

Moulton's motion to amend does not assert any claim upon which relief might be granted.[2] Granting the motion to amend would therefore be futile and "would serve no useful purpose." See Todisco, 497 F.3d at 98. Accordingly, Moulton's motion to amend his complaint (doc. no. 56) should be denied.

---

[2]The motion to amend (doc. no. 56) does not seek to add claims against anyone at the SCDC or the NHSP alleging inadequate medical care or unconstitutional conditions of confinement.

**Conclusion**

For the foregoing reasons, the court recommends that the motion to amend (doc. no. 56) be denied.  Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge


March 20, 2012

cc:  Richard Moulton, pro se
     Stephen A. Murray, Esq.
     Corey M. Belobrow, Esq.


LBM:jba